```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

Ronald Turner and                       :
Bonnie Coenen                           :
                                        :
    Plaintiffs                          : Case No. 3:15-CV-906
                                        :
    v.                                  :(Judge Richard P. Conaboy)
                                        :
State Farm Fire & Casualty Company      :
                                        :
    Defendant                           :

                              Memorandum

## A.  Background.

We consider here a Motion for Summary Judgment (Doc. 35) filed by Defendant State Farm Fire & Casualty Company ("State Farm")on March 27, 2017.  Plaintiffs Robert Turner and Bonnie Coenen filed this lawsuit against State Farm as a result of a fire that destroyed their residence in Shickshinny, Pennsylvania on December 24, 2013.  Plaintiffs had an insurance policy with State Farm that covered their home and its contents.  They allege that State Farm refused to pay for certain covered damages under that policy and unreasonably delayed payment on other lost property.  Their Complaint (Doc. 1, Exhibit A) sets forth causes of action for breach of contract and bad faith.

State Farm contends that it reasonably and promptly compensated Plaintiffs for all covered losses and that any delay in payment was a result of Plaintiffs' failure to perform their obligations under their policy with State Farm.  The parties have

briefed their positions (Docs. 36, 41, and 45) and this motion is now ripe for disposition.

**B.    Undisputed Facts.**[1]

1.    On or about April 6, 2015 Plaintiffs commenced the instant lawsuit by complaint filed in the Luzerne County Court of Common Pleas.

2.    On May 5, 2015, State Farm removed this case to the United States District Court for the Middle District of Pennsylvania.

3.    Plaintiffs' complaint alleges causes of action for breach of contract and bad faith against State Farm arising out of a homeowners' claim submitted by the Plaintiffs.

4.    On or about December 24, 2013, the Plaintiffs "sustained a loss and damages" due to a fire in their residence located at 414 Bloomingdale Road, Shickshinny, Pennsylvania.

5.    The Plaintiffs' residence was insured under a homeowners policy of insurance issued by State Farm - - Policy # 78-DJ-F880-5.

6.    The policy provided coverage as follows: (a) $193,200.00 for the structure; (b) $144,900.00 for personal property; and (c) loss of use as determined by the actual loss sustained.

7.    The Plaintiffs never rebuilt their home after the fire.

8.    The Plaintiffs have not contacted any contractors about

---

[1] The "Undisputed Facts" in the context of this Memorandum have been compiled by cross-referencing Defendant's Statement of Undisputed Facts (Doc. 37) with Plaintiffs' Answer (Doc. 39) thereto.

rebuilding their home.

9. State Farm paid Defendant $193,200.00 for the loss of the structure on or about March 20, 2014.[2]

10. On the date after the fire State Farm Agent, Robert Thompson, advanced the Plaintiffs $2,000.00 on their personal property coverage.

11. On December 26, 2013, State Farm claim representative Ray Moncavage wrote to the Plaintiffs and advised that there was additional coverage under "Option OL-Building Ordinance or Law." This is additional coverage that is payable when such costs are incurred, and the letter set forth the policy language concerning such coverage.

12. Mr. Moncavage also indicated to Plaintiff Coenen that she would need to complete a Personal Property Inventory.

13. Mr. Moncavage requested that Plaintiff Coenen provide drawings of the layout of the home in January of 2014 in order that he could prepare an estimate.

14. On or about March 4, 2014, Plaintiff Coenen retained a public adjustor, Scott Seeherman, to represent her concerning her claim with State Farm.

15. Mr. Seeherman had dealt with Mr. Moncavage in the past, had not had any problems working with him, and confirmed that there

---

[2] While Plaintiffs allege that State Farm did not make payment until August of 2014, their allegation is completely undocumented and the record clearly indicates that State Farm paid the policy limits for the structure less than three months after the loss occurred.

3

was good communication between the two.

16. Mr. Seeherman contacted State Farm soon after his retention and requested an additional advance payment on contents/personal property in the amount of $10,000.00

17. State Farm then issued a check in the amount of $10,000.00 as requested by Mr. Seeherman on March 4, 2014.

18. At the time he was retained, Mr. Seeherman advised Plaintiff Coenen that she needed to prepare a "personal property inventory" to submit her personal property claim.

19. Mr. Seeherman informed Mr. Coenen that the submission of personal property inventory was standard practice in all total loss situations.

20. Plaintiff Coenen did not submit a personal property inventory to State Farm until June 19, 2015 - - some 16 months after Mr. Seeherman informed her that the form was required to resolve the personal property loss aspect of her claim and some 18 months after the fire.

21. On July 29, 2015 - - 10 days after Plaintiff Coenen submitted her personal property inventory - - State Farm issued a check in the amount of $75,000.00 which represented "an advance on contents".

22. On October 7, 2015, State Farm issued an additional payment in the amount of $60,400.00 in recognition of Plaintiff's personal property claim.

4

23. By October 7, 2015, State Farm had paid Plaintiffs a total of $147,400.00, an amount that equaled Plaintiffs' total personal property coverage under the applicable policy, plus $2,500.00 for jewelry coverage.

24. Mr. Seeherman, Plaintiffs' adjustor, acknowledged that "if there's no additional coverage, there's no additional payment." Seeherman Deposition at 76.

25. Following the fire, Plaintiffs stayed with Plaintiff Coenen's daughter at her home for three months.

26. Plaintiffs were not charged rent by Plaintiff Coenen's daughter during their three-month stay at her home.

27. After staying three months with Plaintiff Coenen's daughter, Plaintiffs moved to the Woodlands Hotel and remained there through December of 2015.

28. State Farm paid for the Plaintiffs' living expenses during the nine months they stayed at the Woodlands Hotel.

29. Plaintiff Coenen has acknowledged that she discussed alternative housing arrangements with Mr. Moncavage and that he referred her to a company called VIP Insurance Housing Options.

30. On April 1, 2015, State Farm issued a check to Plaintiff Coenen's daughter in the amount of $4,258.07 in payment of Plaintiffs' rental debt for the first three months of 2014.

31. The amount paid to Plaintiff Coenen's daughter was arrived at by prorating the actual time Plaintiff spent in her home

5

at the rate, $1,500.00 per month, that she charged.

32. Plaintiffs have not sought additional living expenses under the applicable policy beyond what State Farm has paid and Plaintiffs acknowledge that they have been paid in full for their alternative living expenses.

33. Plaintiffs continue to claim that they are owed $9,660.00 for "trees, shrubs, and other plants" that were destroyed in the fire.

34. State Farm had no more direct contact with Plaintiffs after March of 2014 when they retained Mr. Seeherman as their adjustor.

35. Plaintiffs acknowledge that State Farm never misrepresented any of the available coverages under the policy.

**C. Summary Judgment Standard.**

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect

6

the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. Conoshenti v. Public Serv. Elec. & Gas., 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. Celotex Corp. V. Catreet, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." Id. at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Id. At 324.

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the non-moving party. Abramson v. William Patterson College of N.J., 260 F.3d 265, 267 (3d Cir. 2001) (citing Drinkwater v. Union Carbide Corp., 904 F.2d 853, 854 N.1 (3d Cir. 1990). "In considering a motion for summary judgment, a

district court may not make credibility determinations or engage in any weighing of evidence." Anderson, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**D.  Discussion.**

The record developed by the parties discloses that State Farm has paid no less than $347,000.00 to Plaintiffs under the applicable policy of insurance to date.[3] Plaintiffs have acknowledged that State Farm has reimbursed them in full for the value of their structure, the value of their personal property, and their alternative living expenses. The remaining compensation Plaintiffs claim to be due and owing under the policy is the sum of $16,789.02 for restorative landscaping and debris removal. This sum is sought in a count sounding in breach of contract.[4] Because it is clear to the Court that factual issues remain before it can be determined whether Plaintiffs are owed this additional $16,789.02 or any part thereof, the breach of contract count will stand.

However, the real bone of contention here is Plaintiffs'

---

[3] State Farm has also paid the cost of nine months lodging at the Woodlands Hotel. This sum has not been quantified in the record.

[4] The complaint sought only $9,660.00 (See Doc. 1-2 at Paragraph 9) and Plaintiffs added an additional $7,129.02 for removal of debris in their brief. (Doc. 41 at 11).

8

second count sounding in bad faith pursuant to 42 Pa. CSA § 8371. Section 8371 provides that:

> In an action under an insurance policy, if the Court finds that the insurer has acted in bad faith toward the insured, the Court may take all the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

Interestingly, the statute does not define "bad faith". However, numerous courts interpreting the statute have identified the criteria which must be met to make out a bad faith claim under Pennsylvania law. The standard for determining whether bad faith exists has been described by our Circuit Court:

> "Bad faith" on the part of an insurer is any frivolous or unfounded refusal to pay the proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair

9

> dealing)through some motive of self-interest or ill
> will; mere negligence or bad judgment is not bad
> faith.

Northwestern Mutual Life Insurance Company v. Babayan, 430 F.3d 121, 137 (3d. Cir. 2005)(quoting Terletsky v. Prudential Property and Casualty Insurance Company, 649 A.2d 680, 688 (Pa.Super.1994).

To succeed on a bad faith claim, a Plaintiff must demonstrate "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Verdetto v. State Farm Fire and Casualty Company, 837 F.Supp 2d. 480, 484 (M.D.Pa. 2011), affirmed 2013 W.L. 175175 (3d. Cir. January 17, 2013)(quoting Klinger v. State Farm Mutual Insurance Company, 115 F.3d 230, 233 (3d. Cir. 1997). In addition, a Plaintiff must demonstrate bad faith by clear and convincing evidence. Polselli v. Nationwide Mutual Fire Insurance Company, 23 F.3d 747, 751 (3d. Cir. 1994). For an insurance company to show that it had a reasonable basis to deny or delay paying a claim it need not demonstrate that its investigation yielded the correct conclusion, or that its conclusion more likely than not was accurate. Krisa v. Equitable Life Assurance Company, 113 F.Supp 2d. 694, 704 (M.D.Pa. 2000). The insurance company is not required to show

10

that "the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion." Id. Instead, an insurance company must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action. Id. "The 'clear and convincing' standard requires that the Plaintiff show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction without hesitation, about whether or not the defendants acted in bad faith.'" J.C. Penney Life Insurance Company v. Pilosi, 393 F.3d 356, 367 (3d. Cir. 2004).

The record the parties have developed makes it clear that any delay experienced by Plaintiffs in their receipt of just compensation under the subject policy was in that area of the policy providing coverage for the loss of personal property.[5] We start our analysis with the recognition that the rights and obligations of the parties are governed by the contract of insurance between them. That contract includes an unambiguous provision that specifies:

---

[5] We note that Plaintiffs' inaccurately allege that they did not receive $193,200.00 in compensation for the destruction of their structure until August 4, 2014. See Doc. 41 at 1. In fact, however, the record documents that Defendant tendered the $193,200.00 policy limits for loss of the structure on March 20, 2014. See Doc. 46, Exhibits 34 and 35. The provision of the policy limits for the destruction of the structure within less than three months of the date of the loss was categorically prompt enough to counter any allegation of unreasonable delay on this point.

11

2. Your Duties After Loss.

After a loss to which this insurance may apply you [the insured party] shall see that the following duties are performed:

...

c. Prepare an inventory of damages or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory.

...

e. Submit to us [the insurer] within 60 days after the loss your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

...

(6) an inventory of damaged or stolen personal property as described in 2.c.

Doc. 46-1, Exhibit 2 at 13.[6]

This unambiguous provision of the contract places, to a great extent, the responsibility for the timing and amount of payments received in the hands of the insured. Plaintiffs were required to produce some basis for the insurance company to make appropriate reimbursements for the loss of personal

---

[6] This Exhibit is a certified copy of the policy in question.

property.  This the Plaintiffs simply did not do until June 19, 2015 - - some 18 months after the fire, some 18 months after Mr. Moncavage first informed them of their obligation to provide documentation of the lost property, and some 16 months after the public adjustor they retained echoed Mr. Moncavage's message.[7]

In short, Plaintiffs' failure to perform their reporting duty under the contract impeded, wittingly or unwittingly, State Farm's investigation of their claim.  Thus, the delay in payment for the value of their personal property was a direct result of Plaintiffs' failure to perform their contractual duties and, as such, may not serve as an appropriate basis for a finding of bad faith on Defendant's part.  Stated another way, Plaintiffs may not now seek to profit due to their lack of action.

Plaintiffs' stated rationale for asserting that Defendant acted in bad faith is the repeated mantra that Defendants knew that "no contents were salvageable".  See Doc. 39 at ¶¶ 9, 11, 13, 15, and 21 through 41.  While Plaintiffs' assertion may be  true, it is not probative of unreasonable delay on Defendant's part.  Defendant transmitted an advance against lost personal property of $2,000.00 one day after the fire.

---

[7] It should also be noted that Mr. Moncavage transmitted additional letters advising Plaintiffs of their obligation to provide the personal property inventory on 12 other occasions.  See Doc. 36-1, Exhibits 4, 6, 10-14 and 16-21.

When Plaintiffs' adjustor requested an additional advance on March 4, 2014, Defendant immediately furnished an additional advance in the amount of $10,000.00. The fact that Plaintiffs had experienced a total loss begged the question of the value of that loss. If a person loses personal property the value of which is completely unquantified, this would not justify the insurer's provision of policy limits in excess of $144,000.00 as existed here. Defendant justifiably waited for Plaintiffs to provide some documentation of the magnitude of their loss and the Court will not fault State Farm for expecting Plaintiffs to perform under the contract of insurance.

The record discloses that on June 29, 2015 State Farm finally received the personal property inventory that it had repeatedly requested Plaintiffs to provide for more than 18 months. On July 15, 2015, Plaintiffs forwarded an amended personal property inventory to State Farm. Two weeks later, on July 29, 2015, State Farm transmitted a check for $75,000.00 as an "advance". On October 7, 2015, State Farm forwarded an additional check in the amount of $60,400.00. Thus, Plaintiffs received the entire reimbursement of their policy limits for loss of personal property within 11 weeks of their provision of the amended personal property inventory. The Court cannot regard this as an unreasonable delay

justifying any additional compensation for bad faith.[8]

For the reasons discussed above, the Court determines that no reasonable juror could conclude that the Defendant exhibited "bad faith" as defined in Verdetto v. State Farm, supra at 484 ( and as affirmed at 510 Fed. Appx. 209 (3d. Cir. 2013)).  This would be true even if the operative evidentiary standard was by a mere preponderance of the evidence.  Where, as here, the standard for proving a bad faith claim is provision of clear and convincing evidence" (See Polselli, ante at 7), it is unthinkable that reasonable jurors could find for Plaintiffs on this issue.  Accordingly, Plaintiffs' count sounding in bad faith must be dismissed.  An Order consistent with the forgoing determinations will be filed contemporaneously.

BY THE COURT

                                  <u>S/Richard P. Conaboy</u>
                                  Honorable Richard P. Conaboy
                                  United States District Court

Dated: May 30, 2017

---

[8] It should be noted that an additional factor that can serve as the basis for a bad faith claim is any misrepresentation by the insurer of available coverages under a policy.  However, Plaintiffs have acknowledged that no such misrepresentation occurred.  (Doc. 37, P. 63; Doc. 39, P. 63).